## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRANDON GULLY, #R56606,                )
                                        )
            Plaintiff,                  )
                                        )
    vs.                                 )        Case No. 24-cv-01404-SMY
                                        )
PERCY MYERS                             )
and CYNTHIA REED,                       )
                                        )
            Defendants.                 )

## MEMORANDUM AND ORDER

**YANDLE, Chief District Judge:**

Plaintiff Brandon Gully filed this action against Dr. Percy Myers and Nurse Cynthia Reed under 42 U.S.C. § 1983 for the alleged denial of medical care for his high blood pressure and heart issues, in violation of the Eighth Amendment.  (Doc. 1).  Defendants now seek summary judgment, alleging Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (Doc. 32).  Plaintiff opposes the motion (Doc. 38).  For the following reasons, summary judgment will be **GRANTED**

### BACKGROUND

Plaintiff filed this action under 42 U.S.C. § 1983 against Dr. Percy Myers, Nurse Cynthia Reed,[1] and Wexford Health Sources, Inc.  Plaintiff alleges he was diagnosed with high blood pressure in August 2021 at Hill Correctional Center (Hill).  (Doc. 1, p. 3).  He transferred to Vienna Correctional Center (Vienna) on or around October 20, 2021, and reported this diagnosis to Nurse Reed during intake.  *(*Docs. 1, 22, 23).  He also complained of persistent chest pain, shortness of breath, and left-side numbness.  Nurse Reed did not address his complaints.  *Id*.

---

[1] This defendant was originally identified as Nurse Jane Doe and later as Nurse Cynthia Reed. (Docs. 1, 22, 23).

1

Dr. Percy Myers met with Plaintiff on October 25, 2021.  (Doc. 1, p. 3).  Plaintiff described his symptoms of high blood pressure, chest pain, breathing difficulties, and left-side numbness. He added that Hill's security staff called 3 separate Code 3 medical emergencies for identical symptoms.  Plaintiff reported these symptoms to Dr. Myers again on November 1, 2021.  He also reported the symptoms at nurse sick call and to Dr. Myers on January 10, 2022.  The doctor took no action to treat him.  *Id*.

Vienna's security staff called a Code 3 medical emergency on February 15, 2022, after Plaintiff was found breathless in Building 19.  *Id*. at 6.  He was taken to see the duty nurse and reported months of persistent chest pain, breathing difficulties, and left-side numbness.  Following abnormal blood tests, he was transported to the hospital where a coronary angiogram revealed a blocked left anterior descending artery and myocardial infarction (*i.e.*, a heart attack).  *Id*. at 7.

Plaintiff was scheduled for cardiac stent surgery on April 6, 2022.  During the procedure, surgeons determined he also needed open heart surgery.  Plaintiff underwent coronary bypass surgery on June 3, 2022.  Plaintiff claims Dr. Myers and Nurse Reed's 5-month delay in treatment at Vienna amounted to deliberate indifference in violation of the Eighth Amendment.  *Id*. at 8-13.

The Court screened the *pro se* Complaint under 28 U.S.C. § 1915A and allowed the following claim to proceed:

> Count 1:    Eighth Amendment claim against Dr. Myers and Nurse Reed for delaying or denying treatment of Plaintiff's high blood pressure, chest pain, breathing difficulties, and left-side numbness in 2021-22 at Vienna, resulting in left anterior arterial blockage, myocardial infarction, and heart surgery in 2022.

(Doc. 12).  Count 2 was dismissed without prejudice for failure to state a claim against Wexford. *Id*.  In their Answers, Defendants Myers and Reed asserted an affirmative defense based on Plaintiff's failure to exhaust administrative remedies before filing this lawsuit.  (Docs. 21, 30).

2

**MOTION FOR SUMMARY JUDGMENT**

Defendants Myers and Reed seek summary judgment based on Plaintiff's failure to exhaust his administrative remedies before filing suit in violation of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). (Doc. 33). They claim the Administrative Review Board received one grievance from Plaintiff between August 21, 2021 and May 29, 2024 (Grievance #23-06-022-VCC, dated June 13, 2022). According to Defendants, Grievance #23-06-022-VCC fails to address any allegations of misconduct against them and was rejected on procedural grounds as being untimely at every level submitted. *Id.*

Plaintiff concedes the June 13, 2022 grievance is the only one at issue, but argues it describes a continuing violation of his rights that occurred at Hill and Vienna, and adequately apprises both facilities of his claims. He asks that summary judgment be denied on this basis.

**FINDINGS OF FACT**

For purposes of the pending motion, the following material facts are undisputed (*see* Findings of Fact (FOF) at Docs. 33 and 58): Plaintiff filed his Complaint on May 29, 2024. (FOF 1, Doc. 1). Plaintiff's grievance records from the Administrative Review Board (ARB) show that he submitted a single grievance to the ARB between August 21, 2021 and May 29, 2024: Grievance #23-06-022-VCC dated June 13, 2022. (FOF 2-3, Doc. 33, Ex. 1 at 1). In Grievance #23-06-022-VCC, Plaintiff states:

> On 9-12-21 while incarcerated at Hill CC I was walking to Dietary Hall where I was working at at the time when I had to sit on the ground and a code 3 was called due to me having chest pains and shortness of breath. I was escorted by wheelchair to HCU where I was given an EKG, which came back abnormal, and I preceded to report the symptoms I was having which includes chest pains, left arm pains, and shortness of breath, as well as vomiting earlier that day. I also let nurse know about my history of high blood pressure. I was sent back to unit after being seen. On 9-19-21 I reported the same issues/concerns to the NP also it known that I was having the same symptoms I then had a EKG done which came back abnormal. I was sent back to unit after being seen. On 9-22-21 I was called to HCU for follow up BP check when I asked for reasons behind/for the symptoms I was having and I was told that my symptoms could have been either a pulled muscle, trapped

gas, and/or very bad heart burn. I was told to "stop working out for a little while," given tums, and Pepcid. With being said, I was transferred to Vienna CC around 10-19-21 whereas I continued to complain about my issues/symptoms til the point of them sending me to the outside hospital where I was given a CAT scan, MRI, and heart cath. I then found out that I have coronary artery disease, that one of my arteries that supply blood to my heart muscle had been clogged and that the symptoms I was having is called "angina pectoris." My left main coronary artery is almost completely clogged/blocked causing poor pumping function to my left ventricle to the point that stenting it is too high risk and that getting coronary artery bypass craft surgery would be in my best interest in assisting me to live longer. I was told by doctor that I'm lucky to be alive. Due to their negligence at Hill CC HCU I was misdiagnosed, which left to my situation worse, as to whether if they would of sent me out aware of my history of high BP my blockage could've been caught before getting too bad. I have since been suffering from this pain since September 2021.

(FOF 4, Doc. 33, Ex. 1 at 3-4).

Plaintiff's counselor responded on June 28, 2022, indicating the incidents occurring at Hill in September 2021 were outside the mandatory 60-day timeframe and outside the jurisdiction of Vienna. (FOF 5, Doc. 33, Ex. 1 at 3). The counselor directed Plaintiff to submit Grievance #23-06-022-VCC to the ARB instead. *Id*. The ARB received the grievance on July 22, 2022 and returned it to Plaintiff without further redress, concluding it was "not submitted in the timeframe outlined in Department Rule 504." (FOF 6-7, Doc. 33, Ex. 1 at 2).

**DISCUSSION**

**Legal Standards**

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party, *i.e.*, the prisoner. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). Generally, the district court's role on summary judgment is not to weigh evidence or judge witness credibility.

4

The district court's approach to factual disputes is different when presented with a motion for summary judgment on the issue of exhaustion. In *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), the Seventh Circuit instructed district courts to conduct an evidentiary hearing to resolve contested issues of fact concerning exhaustion. More recently, the Supreme Court partially overruled *Pavey* in *Perttu v. Richards*, 605 U.S. 460, 464 (June 18, 2025) when it held that exhaustion disputes must be reserved for a jury if contested facts on exhaustion are intertwined with factual disputes on the merits of a claim. Thus, when the district court is presented with a motion for summary judgment on exhaustion with material facts in dispute, it must consider whether intertwinement between exhaustion and the merits requires a jury trial. Here, there are no intertwined issues requiring a jury trial[2] and no material factual disputes requiring a *Pavey* hearing. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009). As only legal questions remain, the pending motion can be resolved without a hearing.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires a prisoner to exhaust all available administrative remedies before bringing a suit in federal court about the conditions of his confinement. *Pavey*, 544 F.3d at 740. To properly exhaust, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of

---

[2] The Supreme Court decided *Perttu* while the summary judgment motion was pending, so the Court requested supplemental briefing to address the impact of *Perttu* on the motion. *See* Doc. 42. Defendants filed a Supplemental Brief (Doc. 43), and Plaintiff filed no response in opposition to it. After reviewing Defendants' Supplement, the Court finds that *Perttu* is distinguishable from this case. Unlike *Perttu*, the material facts surrounding exhaustion are not in dispute. There is also no intertwinement between the facts underlying exhaustion and the merits of the claims. This case involves an Eighth Amendment medical deliberate indifference claim and no retaliation claim. The questions on exhaustion can be resolved without addressing the questions on the merits. Thus, *Perttu* poses no barrier.

proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011); *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

The Illinois Administrative Code sets forth the grievance process that applies to an inmate in the custody of the Illinois Department of Corrections. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017). The inmate must file his grievance with a counselor within 60 days of the incident, occurrence, or problem giving rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). The grievance must contain factual details about each aspect of the inmate's complaint, including what happened, when, where, and the name(s) of the person(s) involved in the matter. If the inmate does not know the name(s), the inmate must describe each person with as much detail as possible. 20 ILL. ADMIN. CODE § 504.810(c).

If the grievance is not resolved informally through the counselor, the grievance must be submitted in writing to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO) (warden) within 2 months after receiving the written grievance, when reasonably feasible. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the CAO's response, he may file an appeal with the IDOC Director through the Administrative Review Board (ARB) within 30 days of the CAO's decision. 20 ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of responses from the grievance officer and CAO to his appeal. *Id.*

The ARB considers the matter and submits a written report of its findings and recommendations to the Director, who makes a final determination within 6 months of receipt of the matter, when reasonably feasible under the circumstances. 20 ILL. ADMIN. CODE §§ 504.850(d), (e).

If he faces an emergency, an inmate can use an alternative procedure to file his grievance by submitting the emergency grievance directly to the CAO. 20 ILL. ADMIN. CODE § 504.840. If the warden deems the grievance an emergency, the grievance is expedited for processing in whatever manner the warden specifies. *Id.* If the CAO determines that grievance should not be handled on an emergency basis, the grievance is denied as a non-emergency and must be resubmitted in accordance with the standard grievance procedure outlined above. 20 ILL. ADMIN. CODE § 504.840(c).

An inmate grieving one of the following issues shall submit a grievance directly to the ARB: (1) decisions regarding protective custody placement, including continued placement in or release from protective custody; (2) decisions regarding the involuntary administration of psychotropic medication; (3) decisions regarding disciplinary proceedings that were made at a facility other than the facility where the offender is currently assigned; and (4) other issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues. 20 ILL. ADMIN. CODE §§ 504.870(a)(1)-(4). The ARB reviews and processes these grievances in accordance with Section 504.850.

### Analysis

Plaintiff filed a single grievance regarding allegedly inadequate medical care for high blood pressure, chest pains, breathing difficulties, and left-side numbness; Grievance #23-06-022-VCC dated June 13, 2022. His symptoms occurred at two facilities: (1) Hill through October 19, 2021; and (2) Vienna beginning October 20, 2021. Plaintiff argues he was only required to file one grievance to address his medical care at both facilities because a continuing violation of his constitutional rights began at Hill and continued at Vienna.

7

Prisoners need not file multiple, successive grievances addressing the same issue at the same prison, if the objectionable condition or policy is continuing. Once a prisoner notifies a prison of a problem and gives the facility an opportunity to correct it, the prisoner has fulfilled the purposes of the exhaustion requirement. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). However, Plaintiff's case does not present a situation in which a single grievance serves as sufficient notice of an ongoing unconstitutional condition or policy at the same prison.

Although Plaintiff's symptoms of high blood pressure, chest pain, breathing difficulties, and left-side numbness occurred at two facilities, each medical provider's alleged failure to treat his symptoms constituted discreet acts rather than a single course of conduct that continued after his transfer from one facility to the next. *See Tackett v. Jess*, 853 F. App'x 11, 13 (7th Cir. 2011); *Jones v. Feinerman*, 09-C-3916, 2011 WL 4501405, at \*4 (N.D. Ill. Sept. 28, 2011) (continuing violation ended when prisoner transferred to a different institution); *Burt v. Berner*, 13-cv-00794-NJR-DGW (S.D. Ill. April 14, 2015) (prisoner needed to file new grievance for incidents of deliberate indifference that occurred after he was transferred to new facility). Thus, Plaintiff's grievance complaining of medical deliberate indifference at Hill does not serve to exhaust his claims of medical deliberate indifference against officials at Vienna.

Moreover, although a plaintiff need not name each individual responsible for the claimed harm, Grievance #23-06-022-VCC does not name, describe, or allude to any harm caused by a denial of care at Vienna. Rather, the grievance addresses the care Plaintiff claims he was *denied* at Hill due to medical staff's negligence and contrasts this with the care he *received* at Vienna.

Vienna grievance officials reviewed Grievance #23-06-022-VCC and returned it to Plaintiff on June 28, 2022. They instructed him to file it directly with the ARB because it addressed conduct at his prior facility (Hill) and not his current facility (Vienna); the ARB denied the

8

grievance less than a month later.  (Doc. 7, Doc. 33, *id*.).  At that point, Plaintiff still had time to file a new grievance addressing his concerns against Nurse Reed and Dr. Myers that arose at Vienna, but did not do so.

For the foregoing reasons, the Court finds that Grievance #23-06-022-VCC dated June 13, 2022 did not exhaust Plaintiff's claim against his health care providers at Vienna.  Accordingly, Dr. Myers and Nurse Reed are entitled to summary judgment on the issue of exhaustion.

### CONCLUSION

The Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Percy Myers and Cynthia Reed (Doc. 32) is **GRANTED**.  **COUNT 1** against **BOTH DEFENDANTS** is **DISMISSED** without prejudice based on Plaintiff's failure to exhaust administrative remedies before bringing this suit in federal court.  **COUNT 2** was dismissed without prejudice at screening against **WEXFORD HEALTH SOURCES, INC.**  *See* Doc. 12. As no claims remain pending, the entire action is **DISMISSED** without prejudice.

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment.  FED. R. APP. P. 4(a)(1)(A).  A motion for leave to appeal *in forma pauperis* should set forth the issues he plans to present on appeal.  *See* FED. R. APP. P. 24(a)(1)(C).  If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2).  Moreover, if the appeal is found to be nonmeritorious, he may also incur another "strike."  A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.  FED. R. APP. P. 4(a)(4).  A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk is **DIRECTED** to close this case and enter judgment accordingly against all defendants.

**IT IS SO ORDERED.**

**DATED:  March 9, 2026**

s/ *Staci M. Yandle*  
**STACI M. YANDLE**  
**Chief U.S. District Judge**